UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TZU-HSIANG TUNG
*and all others similarly situated*,

                              Plaintiff,

v.

BANZAI STEAKHOUSE INC., *et al*,

                              Defendants.

No. 22-CV-5750 (KMK)

OPINION & ORDER

---

Appearances:

Brian S. Schaffer, Esq.
Frank J. Mazzaferro, Esq.
Katherine Bonilla, Esq.
Fitapelli & Schaffer LLP
New York, NY
*Counsel for Plaintiff*

Raymond Nardo, Esq.
Law Office of Raymond Nardo
Mineola, NY
*Counsel for Plaintiff*

Sameer Nath, Esq.
Yuting Zhang, Esq.
Sim & DePaola LLP
Bayside, NY
*Counsel for Defendants*

Sang Joon Sim, Esq.
Sim & Record, LLP
Bayside, NY
*Counsel for Defendants*

KENNETH M. KARAS, District Judge:

Plaintiff Tzu-Hsiang Tung ("Plaintiff") brings this Action against Banzai Steakhouse Inc. ("Banzai Steakhouse") and Karl Shao (collectively, "Defendants"), alleging violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). (*See generally* Compl. (Dkt. No. 5).) Before the Court is Plaintiff's Motion for Conditional Collective Certification (the "Motion"). (*See* Dkt. No. 18.) For the following reasons, Plaintiff's Motion is granted.

## I.  Background

### A.  Factual Background

The following facts are taken from the Complaint and Plaintiff's supporting declaration. (Mazzaferro Decl. (Dkt. No. 20).)

Banzai Steakhouse is a Japanese Restaurant with its principal place of business located in Hartsdale, New York. (Compl. ¶ 10.) Plaintiff was employed by Defendants as a waiter from April 14, 2022 through June 1, 2022. (*Id*. ¶ 16.) "Plaintiff was not exempt from the minimum wage or overtime requirements set forth in the FLSA" or the "the minimum wage or overtime requirements set forth in the NYLL." (*Id*. ¶¶ 18–19.) Plaintiff worked approximately five days a week; from approximately 1:00 p.m. to 10:00 p.m. three days a week and approximately 11:00 a.m. to 11:00 p.m. two days a week. (*Id*. ¶ 20.) Plaintiff alleges that despite the numerous hours Plaintiff worked throughout the day, he was always paid a flat rate of $40 per day which was below the minimum wage and that he was not paid at time and one half the regular rate of pay for hours worked in excess of 40 hours per week. (*Id*. ¶¶ 21–22.) Plaintiff was not permitted an uninterrupted half hour for required meal breaks during Plaintiff's shifts. (*Id*. ¶ 23.) Plaintiff also did not receive proper pay stubs. (*Id*. ¶ 25.)

Plaintiff participated in a tip pool, however "Defendants included kitchen employees, who were not directly involved in the serving of food or beverages" in the tip pool and Defendants did not keep proper records of the tip pool. (*Id*. ¶¶ 27–29.) Specifically, Plaintiff "was required to share tips with kitchen employees including the Kitchen Chef Xao Zhao and a dishwasher referred to as 'Uncle'"—he "observed kitchen employees such as Chef Xao Zhao and Dishwasher 'Uncle' receive tips" at the end of the night. (Mazzaferro Decl. Ex. B ¶¶ 7–8 (Dkt. No. 20).) Chefs "had very minimal interaction with customers"—Plaintiff generally would not see the chefs take food or drink orders or deliver food to customers, they "primarily remained in the kitchen away from customer view during their shifts"— instead, "food and drink orders were taken by the wait staff, and food and drinks were deliverer to tables by the wait staff." (*Id*. ¶ 9.) Dishwashers also "had very minimal interaction with customers" and "remained in the kitchen away from customer view during their shifts." (*Id*. ¶ 10.) "Numerous wait staff employees" including Jenny, Xao Her, and Fei Peng "also complained amongst one another throughout their shifts regarding kitchen employees receiving tips." (*Id*. ¶ 11.) Plaintiff did not "determine[] how much to tip out the kitchen employees, chefs or dishwashers" and "was not asked whether or not [he] wanted to tip them out." (*Id*. ¶ 12.)

Plaintiff's discussions with other wait staff employees revealed that they were also paid a flat daily rate regardless of hours worked. (*Id*. ¶¶ 6, 13, 15.) When Plaintiff spoke to waiters Jenny, Fei Peng, Xao Her, and Xao Ling in May 2022, they told Plaintiff that they were similarly paid $40 per shift, or less, regardless of the hours they worked. (*Id*. ¶ 15.) "After asking how much [Plaintiff] was paid, Jenny [] told [Plaintiff] that she received $30 per shift, regardless of the hours worked." (*Id*.) Plaintiff "observed that these individuals also worked similar hours to [him]" and "they informed [him] that they did not receive additional pay when they worked over

3

40 hours." (*Id.*)  "Numerous wait staff employees," including Jenny, Fei Peng, Xao Her, and Xao Ling, "also complained amongst one another throughout their shifts regarding Defendants['] failure to pay minimum wage."  (*Id.* ¶ 16.)

B.  Procedural History

On July 6, 2022, Plaintiff filed his Complaint alleging, in part, Defendants' violation of the minimum wage and overtime provisions of the FLSA.  (*See* Dkt. No. 5.)  Defendants filed an answer on August 16, 2022.  (*See* Dkt. No. 6.)  On October 20, 2022, Plaintiff filed a Motion for Conditional Collective Certification pursuant to 29 U.S.C. § 216(b).  (*See* Not. of Mot. (Dkt. No. 18); Mem. of Law in Supp. of Mot. ("Pl.'s Mem.") (Dkt. No. 19).)  Defendants filed their Opposition on December 1, 2022.  (*See* Mem. of Law in Opp. ("Defs.' Mem.") (Dkt. No. 27).)  Plaintiff filed a reply on December 8, 2022.  (*See* Reply to Mot. ("Pl.'s Reply Mem.") (Dkt. No. 29).)

## II. Discussion

A. FLSA Conditional Certification

1. Standard for Conditional Certification

The FLSA provides that an employee whose rights under the FLSA were violated may file an action in any federal or state court of competent jurisdiction "for and in behalf of himself or themselves and other employees similarly situated."  29 U.S.C. § 216(b).  Although the FLSA does not require them to do so, "district courts have discretion, in appropriate cases, to implement § 216(b) by facilitating notice to potential plaintiffs of the pendency of the action and of their opportunity to opt-in as represented plaintiffs."  *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010) (alterations and internal quotation marks omitted).

The Second Circuit has endorsed "a two step-method of certification in an opt-in

collective action under the FLSA." *Amador v. Morgan Stanley & Co.*, No. 11-CV-4326, 2013 WL 494020, at *2 (S.D.N.Y. Feb. 7, 2013) (internal quotation marks omitted). First, the district court must make "an initial determination and send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred." *Id.* (some internal quotation marks omitted). "Once a court conditionally certifies a collective action, it may then facilitate notice to all of the putative class members by approving a notice form." *Jenkins v. TJX Cos.*, 853 F. Supp. 2d 317, 320 (E.D.N.Y. 2012). After discovery is completed, "if it appears that some or all members of a conditionally certified class are not similarly situated," a "defendant may move to challenge certification, at which point a court will conduct a more searching factual inquiry as to whether the class members are truly similarly situated." *Id.* at 320–21.

This case comes before the Court at the first phase, which means Plaintiff need only make a "modest factual showing" that "[he] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the law." *Myers*, 624 F.3d at 555 (internal quotation marks omitted). Although this "modest factual showing" cannot "be satisfied simply by unsupported assertions," it remains a "low standard of proof because the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Id.* (internal quotation marks omitted). "Plaintiffs may satisfy this requirement by relying on their own pleadings, affidavits, declarations, or the affidavits and declarations of other potential class members." *Hallissey v. Am. Online, Inc.*, No. 99-CV-3785, 2008 WL 465112, at *1 (S.D.N.Y. Feb. 19, 2008). Because "the court applies a fairly lenient standard," courts "typically grant[] conditional certification." *Malloy v. Richard Fleischman & Assocs. Inc.*, No. 09-CV-322, 2009 WL 1585979, at *2 (S.D.N.Y. June 3, 2009) (internal quotation marks omitted).

5

Importantly, at this stage, "a court should not weigh the merits of the underlying claims in determining whether potential opt-in plaintiffs may be similarly situated." *Amador*, 2013 WL 494020, at *3 (internal quotation marks omitted). "[A]ny factual variances that may exist between the plaintiff and the putative class do not defeat conditional class certification," *Lynch v. United Servs. Auto. Ass'n*, 491 F. Supp. 2d 357, 369 (S.D.N.Y. 2007), and even if "dates of employment and hours worked are unique to each employee," that "does not necessarily create dissimilarity under the FLSA," *Hallissey*, 2008 WL 465112, at *2.

    2. Analysis

Plaintiff argues that he "has made a strong preliminary showing, through his well-pleaded Complaint and declaration, that Defendants subjected Plaintiff and all other [w]ait [s]taff employees to the same compensation policies, and that these policies violated the FLSA," namely "that, by paying a flat daily rate, the [w]ait [s]taff was paid below the full minimum wage rate and not paid overtime wages" and "Defendants required the [w]ait [s]taff to tip out tip ineligible individuals." (Pl.'s Reply Mem. 2.) Plaintiff contends that his "declaration identifies other members of the prospective collective that were subject to the same unlawful policies and his interactions with those individuals." (*Id*.)

In opposition to Plaintiff's Motion, Defendants argue that proposed class is not similarly situated. (Defs.' Mem. 2–4.) In support, they submit initialed time sheets which purport to show Plaintiff, Xao He, Jenny, and Fei Peng were paid weekly based on the hours they worked rather than by the day as Plaintiff alleges. (Nath Decl. Ex. 1–4 (Dkt. No. 28).) Defendants also note that Jenny's timesheets show that she worked less than 40 hours per week and was therefore not entitled to overtime and that Jenny and Fei Peng's timesheets, "initialed each day, clearly demonstrate[] that [they were] not paid '$30 per day' as Plaintiff avers, but paid $10.00 per

6

hour." (Defs.' Mem. 3; Nath Decl. Ex. 3–4.) Accordingly, Defendants argue that "no factual nexus is demonstrated here that binds the potential class victims" and that the "discrepancies between Plaintiff's averments supported only by his self-serving affidavit and in clear contravention of the demonstrable facts of the case warrant denial of Plaintiff's motion for conditional certification." (Defs.' Mem. 3.) Defendants additionally note that the "annexed time sheets, initialed by Plaintiff each and every day, demonstrate[] that Plaintiff did not work in excess of forty hours per week, further show[] that Plaintiff was given an hour off for lunch, and belie[] Plaintiff's claims that he worked ten hours twice a week and twelve hours three times per week." (*Id*. at 4.) Defendants also point out that "Plaintiff further states he observed 'Chef Xao Zhao' receive tips but fails to acknowledge the well-known common custom of customers at hibachi steakhouses to directly tip chefs who simultaneously entertain customers with extravagant and dexterous manipulation of food and cutlery while cooking their meals in front of customers on their heated tables," and that Plaintiff's claim "that chefs do not have customer contact" is incorrect. (*Id*.)

"Defendant's arguments attack the merits of the case, raise factual disputes, or question the credibility of Plaintiff['s] declarations by introducing additional evidence. . . . [but] [t]he Court does not address these issues at the conditional certification stage." *Filho v. OTG Mgmt., LLC,* No. 19-CV-8287, 2021 WL 1191817, at *5 (S.D.N.Y. Mar. 30, 2021). Accordingly, at this stage, Defendants' attempt to introduce competing evidence and raise factual disputes cannot defeat Plaintiff's Motion. *See Yuan v. & Hair Lounge Inc*., No. 18-CV-11905, 2019 WL 12338302, at *6 (S.D.N.Y. Nov. 7, 2019) ("[I]f the plaintiff's allegations are sufficient on their face to support conditional certification, a defendant may not defeat the plaintiff's motion by presenting conflicting factual assertions.") (citation and quotation marks omitted); *Zaldivar v.*

*JMJ Caterers, Inc.*, 166 F. Supp. 3d 310, 322 (E.D.N.Y. 2016) ("Defendants also have submitted copies of Plaintiff's time cards in an attempt to rebut his assertion that he was not paid overtime wages. . . . This proffer, too, amounts to a premature request for the Court to weigh evidence[.]"); *Flood v. Carlson Rests., Inc.*, No. 14-CV-2740, 2015 WL 260436, at *5 n.6 (S.D.N.Y. Jan. 20, 2015) (rejecting defendants' efforts to weigh competing declarations and other evidence rebutting plaintiffs' conditional certification motion); *Colon v. Major Perry St. Corp.*, No. 12-CV-3788, 2013 WL 3328223, at *5 (S.D.N.Y. July 2, 2013) ("Defendants . . . may not defeat a court's determination that [p]laintiffs are similarly situated by submitting their own affidavits."); *Schwerdtfeger v. Demarchelier Mgmt., Inc.*, No. 10-CV-7557, 2011 WL 2207517, at *5 (S.D.N.Y. June 6, 2011) ("[D]efendants also argue that employees identified by the plaintiffs as managers were in fact maidtre d's who were entitled to tips and gratuities, and therefore the defendants did not retain any of the tips and gratuities and were entitled to the tip credit. This is a factual issue that reaches the merits of the plaintiffs' claims and is therefore inappropriate at this stage of the proceeding.").[1]

---

[1] Defendants also note that "Plaintiff contends he observed a dishwasher named 'Uncle' receive tips but offers no support - by observation or otherwise, that any monies paid to 'Uncle' consisted of tips rather than his hourly wage or bonuses." (Defs.' Mem. 4.)  This is not an instance where Plaintiff "does not ... provide *any* detail as to a single . . . observation or conversation." *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (citation and quotation marks omitted).  "[W]here a plaintiff bases an assertion of a common policy on observations of coworkers or conversations with them, he must provide a minimum level of detail regarding the contents of those conversations or observations." *Reyes v. Nidaja, LLC*, No. 14-CV-9812, 2015 WL 4622587, at *3 (S.D.N.Y. Aug. 3, 2015).  This Plaintiff has done—he contends that at the end of the night he observed kitchen employees—specifically two identified employees—receive tips. (Mazzaferro Decl. Ex. B ¶¶ 7–8.) *Cf. Qing Gu v. T.C. Chikurin, Inc.*, No. 13–CV–2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (denying conditional collective action certification where plaintiffs made "only general allegations ... fail[ed] to provide any factual detail about the other employees, such as names of fellow employees whom they observed or with whom and when they had conversations," and did not "identify the job titles or duties performed by their fellow employees").

8

Here, Plaintiff provides sufficient factual detail to enable the Court to conclude, at least preliminarily, that he is similarly situated to the other wait staff with whom he worked. He identifies other wait staff by their names who he asserts were subject to similar wage-and-hour violations, namely that they were paid below minimum wage, did not receive overtime pay, and were subject to tip diversion. (*See* Mazzaferro Decl. Ex. B. ¶¶ 11, 15.) Plaintiff's assertions are backed both by his observations and specific conversations with identified wait staff. (*Id.*) At this stage, this showing is sufficient to establish conditional certification. *See Shibetti v. Z Rest., Diner & Lounge, Inc.,* 478 F. Supp. 3d 403, 413 (E.D.N.Y. 2020) ("[T]here is a crucial difference between a plaintiff averring that 'I have spoken to other employees and they tell me they are treated the same,' as opposed to, 'I have spoken to [e.g.] Jane Alexander, Joan Smith, and each of them has also told me that they received no tip credit and worked an unpaid training period'[;] [at the conditional certification stage,] [t]he former ... is not adequate, but the latter probably is."); *Chui v. Am. Yuexianggui of LI LLC,* No. 18-CV-5091, 2020 WL 3618892, at *7 (E.D.N.Y. July 2, 2020) (granting conditional certification where "Plaintiff identifies three waitresses and one sushi chef with whom she had conversations who were not properly paid overtime"); *Neris v. R.J.D. Constr., Inc.*, No. 18-CV-1701, 2019 WL 1458239, at *5 (E.D.N.Y. Mar. 29, 2019) (granting conditional certification based on plaintiff's affidavit alleging failure to pay overtime for hours worked in excess of 40 where plaintiff stated that he was aware, based on personal conversations and observations, of other employees who were similarly situated); *Qing Gu v. T.C. Chikurin, Inc.*, No. 13-CV-2322, 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) ("Courts in this Circuit have commonly authorized the sending of collective action notices where plaintiff includes some probative information regarding similarly situated employees such as their names, their duties and their hours worked or where plaintiff provides affidavits from such

9

employees setting forth the pertinent facts.") (collecting cases). That Plaintiff relies only on his own declaration does not preclude conditional certification. *See Miranda v. Gen. Auto Body Works, Inc.*, 17-CV-04116, 2017 WL 4712218, at *2 (E.D.N.Y. 2017) ("While it is true that mere allegations are not enough to justify conditional certification[,] ... there are numerous examples of courts in th[e] [Second] Circuit granting conditional certification based on the pleadings and single affidavit by the plaintiff.") (collecting cases); *Robbins v. Blazin Wings, Inc.*, 15-CV-6340, 2016 WL 1068201, at *6 (W.D.N.Y. Mar. 18, 2016) (noting that the "court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations, [and a]ccordingly, an FLSA collective action may be conditionally certified upon even a single plaintiff's affidavit.") (alteration in original and citation omitted); *Mata v. Foodbridge LLC*, No. 14-CV-8754, 2015 WL 3457293, at *3 (S.D.N.Y. June 1, 2015) ("[C]ourts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit.") (citations omitted).

Thus, from these facts, the Court can fairly infer that other wait staff worked under similar working conditions and "allegedly suffer[ed] the same violations of the FLSA." *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 482 (S.D.N.Y. 2016).

B.  <u>Notice</u>

Plaintiff also requests the Court's approval of the proposed Court-Authorized Notice of Lawsuit and accompanying Consent to Join form (together, the "Notice of Lawsuit"), a shorter email and text message ("the Notice Messages"), and a reminder notice (the "Reminder Notice") (collectively, the "Notices") to the potential plaintiffs. (Pl.'s Mem. 7–9.)

"Once a court determines that a named plaintiff has met his or her burden for initial certification of a collective, the court may grant court-authorized notice informing potential

additional plaintiffs of their opportunity to opt into the lawsuit." *Hernandez v. NHR Hum. Res., LLC,* No. 20-CV-3109, 2021 WL 2535534, at *6 (S.D.N.Y. June 18, 2021). The Supreme Court has held that:

> court-supervised notice is the preferred method for managing the notification process for several reasons: it avoids 'multiplicity of duplicative suits;' it allows the court to set deadlines to advance the disposition of an action; it furthers the 'wisdom and necessity for early judicial intervention' in multi-party actions; and it protects plaintiffs' claims from expiring under the statute of limitations.

*Lynch v. United Servs. Auto. Ass'n,* 491 F. Supp. 2d 357, 367 (S.D.N.Y. 2007) (quoting *Hoffmann-La Roche Inc. v. Sperling,* 493 U.S. 165, 171–72 (1989)).

"[T]he form and content of the notice . . . is to be approved by the [c]ourt prior to mailing," in order to prevent "after-the-fact disputes between counsel." *Krueger v. New York Tel. Co.*, No. 93-CV-0178, 1993 WL 276058, at *3 (S.D.N.Y. July 21, 1993) (citing *Hoffmann-La Roche*, 493 U.S. at 170). "[N]either the FLSA nor the courts have specifically outlined what form court-authorized notice should take and the district court has discretion to determine the notice's appropriate contents." *Hernandez*, 2021 WL 2535534, at *7 (citation and quotation marks omitted). "The overarching policies of the FLSA's collective suit provisions require that the proposed notice provide accurate and timely notice concerning the pendency of the collective action, so that [potential plaintiffs] can make informed decisions about whether to participate." *Whitehorn v. Wolfgang's Steakhouse, Inc.*, 767 F. Supp. 2d 445, 450 (S.D.N.Y. 2011) (alteration in original) (citation and quotation marks omitted). With that in mind, the notice generally should contain:

> a description of some or all of the following: (1) the purpose of the notice; (2) the nature of the lawsuit filed and the relief being sought; (3) the proposed class composition; (4) the legal effect of joining the lawsuit; (5) the fact that the court has not taken any position regarding the merits of the lawsuit; (6) how to join the lawsuit; (7) the purely voluntary nature of the decision and the legal effect of not joining the lawsuit; (8) the prohibition against retaliation; and (9) the relevant contact information for any inquiries.

*Hong v. Haiku @ WP Inc.,* 582 F. Supp. 3d 117, 132 (S.D.N.Y. 2022) (citation omitted).

First, Plaintiff's proposed Notice of Lawsuit explains the nature of the lawsuit filed—namely it states that the:

> lawsuit is about whether Banzai Steakhouse Inc. properly paid its Wait Staff in accordance with federal and New York State Labor Law. In the portion of the lawsuit brought under the FLSA, the Complaint alleges that Banzai Steakhouse Inc. failed to pay Plaintiff and other Wait Staff Employees minimum wages and overtime pay.

(Mazzaferro Decl. Ex. C, at 4.)  Second, the Notice of Lawsuit explains that the lawsuit seeks to recover unpaid minimum wages and overtime pay, other wage violations, and liquidated damages, that prospective plaintiffs will be bound by any decision in this case, the legal effect of not joining the case, and that the Court "is not endorsing the merits of this lawsuit or advising you to participate in this lawsuit." (*Id*. at 2–7.)  Finally, the Notice of Lawsuit further explains that it is a violation of federal and state law to retaliate or discriminate against a plaintiff for taking part in this case, the proposed class composition, how to join the suit, and provides the relevant contact information for any inquiries.  (*Id*. at 2–5.)

Defendants broadly object to the Notices on the basis that Plaintiff "has not demonstrated a factual nexus between 'similarly situated Plaintiffs.'" (Defs.' Mem. 5.)  However, as the Court has already determined, *supra* II.A.2, Plaintiff has met the standard for conditional certification. Defendants do not object to any language contained in the Notices, Defendants only request that the Notice of Lawsuit "contain an advisement that the intended recipients . . . have the right to consult with their own attorneys." (*Id*. at 6.)  When, as here, the consent form is to be sent to Plaintiff's counsel and not the Court (*see* Mazzaferro Decl. Ex. C, at 5) courts have held "there is only a minimal risk that opt-in plaintiffs will be discouraged from seeking their own counsel" when the "notice makes clear that opt-in plaintiffs can select their own counsel." *Viriri v. White*

12

*Plains Hosp. Med. Ctr.*, 320 F.R.D. 344, 357 (S.D.N.Y. 2017) (citation and quotation marks omitted); *see also Yap v. Mooncake Foods, Inc.,* 146 F. Supp. 3d 552, 567 (S.D.N.Y. 2015) (noting that the "fact that Plaintiffs' proposed notice explicitly advises potential opt-in plaintiffs that they may consult or retain another attorney, mitigat[es] concerns that putative class members may be discouraged from retaining their own counsel") (citation and quotation marks omitted). Accordingly, the Court approves the Notices Plaintiff has submitted on the condition that the Notice of Lawsuit must additionally state that potential opt-in plaintiffs "may consult or retain their own counsel."

Plaintiff additionally requests that the Notices be disseminated by mail, email, and text, and that such notices be translated to Mandarin Chinese, as some workers at the Banzai Steakhouse primarily speak Chinese. (Pl.'s Mem. 7–9; Mazzaferro Decl. Exs. C– E.) Defendants do not object to the means Plaintiff has proposed for dissemination of the Notices or Plaintiff's request to allow a Chinese language translation of the Notices to be sent to potential opt-in plaintiffs. (*See generally* Defs.' Mem.) Indeed, "[n]otice of class actions by email have now become commonplace." *Knox v. John Varvatos Enterprises Inc.*, 282 F. Supp. 3d 644, 667 (S.D.N.Y. 2017). Similarly, as the "putative collective is comprised of hospitality employees [who] tend to be more transient than other industries[] and that as a result of the Covid-19 pandemic, the workers were made more transient given long shutdowns," "[t]ext notice [should] be permitted." *Mangahas v. Eight Oranges Inc.,* No. 22-CV-4150, 2022 WL 10383029, at *9 (S.D.N.Y. Oct. 18, 2022) (first alteration in original) (internal citations and quotation marks omitted). Accordingly, the Court grants Plaintiff's request that the notices be disseminated by mail, email, and text. *See Martinenko v. 212 Steakhouse*, No. 22-CV-518, 2022 WL 1227140, at *7 (S.D.N.Y. Apr. 26, 2022) (permitting notice by first class mail, email, and text); *Millin v.*

13

*Brooklyn Born Chocolate, LLC*, No. 19-CV-3346, 2020 WL 2198125, at *3 (E.D.N.Y. May 6, 2020) ("Simply put, email, text message and other electronic means of communication is far more prevalent than snail mail, whether fortunately or not."); *Cabrera v. Stephens*, No. 16-CV-3234, 2017 WL 4326511 (E.D.N.Y. Sept. 28, 2017) (permitting text and email notice); *Bhumithanarn v. 22 Noodle Mkt. Corp.*, No. 14-CV-2625, 2015 WL 4240985, at *5 (S.D.N.Y. July 13, 2015) (permitting text message notice where the nature of the employer's business facilitated a high turnover rate among employees).  Similarly, courts allow notice "to be translated into the mother tongue of non-English speaking groups of potential plaintiffs." *Hong*, 582 F. Supp. 3d at 134 (allowing translation of notice into Chinese) (citation and quotation marks omitted).

Plaintiff additionally argues that a three-year notice period is appropriate, which Defendants again do not contest. (Pl.'s Mem. 9–10; *see generally* Defs.' Mem.)  The Court agrees.  The FLSA statute of limitations is two years for non-willful violations and three years for willful violations.  29 U.S.C. § 255(a).  "Courts uniformly apply the three-year time period for notice in the interests of reaching all similarly situated employees and on the theory that whether a violation is willful involves the merits and should not dictate who receives notice." *Han v. Madison Ave. Realties, LLC*, No. 22-CV-382, 2022 WL 2609003, at *5 (S.D.N.Y. July 8, 2022).

Defendants additionally do not object to Plaintiff's request that the Court direct them to produce a computer readable list of the full names, last known residence addresses, telephone numbers, last known email addresses, dates of employment, and locations worked for all persons employed by Defendants as wait staff employees at Banzai Steakhouse. (Pl.'s Mem. 10; *see generally* Defs.' Mem.)  "As has been noted by a number of courts in this circuit, courts often

14

grant this kind of request in connection with a conditional certification of an FLSA collective action." *Raniere v. Citigroup Inc.*, 827 F. Supp. 2d 294, 327 (S.D.N.Y. 2011) (citation and quotation marks omitted) (collecting cases). Accordingly, the Court grants Plaintiff's request. *See Viriri.,* 320 F.R.D. at 357–58 (ordering defendant to provide "plaintiff a computer-readable data file containing the names, last known mailing addresses, telephone numbers, Social Security numbers, work locations, and dates of employment of all potential opt-in plaintiffs").

Defendants do, however, specifically object to the issuance of the Reminder Notice Plaintiff has proposed. (*See* Mazzaferro Decl. Ex. F; Defs.' Mem. 5–6.) Defendants argue, with no authority in support, that Plaintiff's counsel "should not be permitted to continually contact or solicit" potential plaintiffs with reminders of the statute of limitations. (Defs.' Mem. 5–6.) The Court disagrees. "Such reminder notices further serve the purpose of notifying all potential opt-in plaintiffs of the pendency of the action." *Aleman-Valdivia v. Top Dog Plumbing & Heating Corp.*, No. 20-CV-421, 2021 WL 4502479, at *9 (E.D.N.Y. Sept. 30, 2021); *see also Cabrera*, 2017 WL 4326511, at *8 (E.D.N.Y. Sept. 28, 2017) ("Practical requests such as [notices and reminder notices] reasonably further the purpose of notice of a collective action under the FLSA."); *Chhab v. Darden Restaurants, Inc.*, No. 11-CV-8345, 2013 WL 5308004, at *16 (S.D.N.Y. Sept. 20, 2013) ("Given that notice under the FLSA is intended to inform as many potential plaintiffs as possible of the collective action and their right to opt-in, we find that a reminder notice is appropriate."); *Morris v. Lettire Const., Corp.*, 896 F. Supp. 2d 265, 275 (S.D.N.Y. 2012) (same).

C.  Equitable Tolling

Plaintiff asks that because the statute of limitations for the potential opt-in plaintiffs normally continues to run until each plaintiff files a consent to join the lawsuit, the Court should

15

exercise its discretion to equitably toll the statute of limitations. (Pl.'s Mem. 11.) Defendants do not object. (*See generally* Defs.' Mem.)

In an FLSA collective action, "the limitations period continues to run for each plaintiff until he or she files written consent with the court to join the lawsuit." *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 170 (S.D.N.Y. 2014). However, "[a] district court may toll the limitations period to avoid inequitable circumstances, giving due consideration to whether the plaintiffs have acted with reasonable diligence in pursuing their claims and whether the circumstances are extraordinary enough to warrant equitable relief." *Id.*; *see also McGlone v. Contract Callers, Inc.*, 867 F. Supp. 2d 438, 445 (S.D.N.Y. 2012) ("[C]ourts have discretion to equitably toll the limitations period in appropriate cases in order to avoid inequitable circumstances." (citation and quotation marks omitted)).

"The most common circumstance where equitable tolling might apply to FLSA actions is where the defendant has concealed the existence of a cause of action from the plaintiffs . . . ." *Mark v. Gawker Media LLC*, No. 13-CV-4347, 2014 WL 5557489, at *2 (S.D.N.Y. Nov. 3, 2014). Some courts have held, however, that in FLSA collective actions, the potential opt-in plaintiffs' claims may be tolled during the period the court takes to decide the conditional certification motion. *See, e.g.*, *Jackson*, 298 F.R.D. at 170 ("The delay required to decide a motion may warrant equitable tolling."); *McGlone*, 867 F. Supp. 2d at 445 ("While plaintiffs wishing to pursue their rights cannot sit on them indefinitely, those whose putative class representatives and their counsel are diligently and timely pursuing the claims should also not be penalized due to the courts' heavy dockets and understandable delays in rulings."); *Yahraes v. Rest. Assocs. Events Corp.*, No. 10-CV-935, 2011 WL 844963, at *3 (E.D.N.Y. Mar. 8, 2011) ("Accordingly, in the interest of fairness, I find equitable tolling is warranted from the date the

plaintiffs served their original certification motion . . . to the date [another judge] issued [a] stay . . . , and from the date [the] plaintiffs re-filed their certification motion . . . to . . . the date I granted it . . . ."). While no court in the Second Circuit has outright rejected the possibility of equitable tolling in such circumstances, several courts have declined to apply equitable tolling where the delay, in their view, was not of such a magnitude as to warrant tolling. *See, e.g.*, *Vasto v. Credico (USA) LLC*, No. 15-CV-9298, 2016 WL 2658172, at *16 (S.D.N.Y. May 5, 2016) (declining to apply equitable tolling where "less than seven months ha[d] passed since [the] plaintiffs filed their original motion for conditional certification in [another district], and less than five months ha[d] passed since [the] plaintiffs renewed their motion in [the Southern District of New York]"); *Martin v. Sprint/United Mgmt. Co.*, No. 15-CV-5237, 2016 WL 30334, at *16 (S.D.N.Y. Jan. 4, 2016) (declining to apply equitable tolling where "less than two and a half months ha[d] transpired since the filing of the [first amended complaint]"); *Mark*, 2014 WL 5557489, at *2–3 (declining to apply equitable tolling where eleven months had passed since the filing of the motion for conditional certification, holding that "the time delay between the date [the] [p]laintiffs filed the motion and its resolution in [that] case was not extraordinary" (internal quotation marks omitted)).

"Thus, the authority, while not split on the *potential* applicability of equitable tolling in this circumstance, is split on the practical application of equitable tolling." *Viriri,* 320 F.R.D. at 355. Here, the Motion was filed on October 20, 2022 and was fully briefed on December 8, 2022. There is thus a substantial gap between the time the Motion was fully submitted and the date of this decision, after which notice will be mailed out and potential opt-in plaintiffs will be made aware of their right to participate in this Action. This delay is longer than the delay in *Martin*, *see* 2016 WL 30334, at *16, and in *Vasto*, *see* 2016 WL 2658172, at *16. "In light of

17

the Court's 'heavy docket[],' and the relatively lengthy delay between the briefing on this Motion and the Court's decision, the Court finds that the circumstances here are sufficiently extraordinary to warrant equitable tolling from the date the Motion was fully briefed, but not from the date the Motion was filed, until the date of this Opinion & Order." *Viriri,* 320 F.R.D. at 356 (tolling from the date the motion for conditional certification was fully briefed when the opinion was issued approximately six months later) (citation omitted).

### III. Conclusion

For the foregoing reasons, Plaintiff's Motion is granted. Plaintiff's proposed collective action is conditionally certified pursuant to 29 U.S.C. § 216(b). The claims of the potential opt-in plaintiffs are tolled for the period between December 8, 2022 and the date of this Opinion & Order. The Notices are approved with the modification discussed above. Defendants shall provide to Plaintiff a computer-readable data file containing the full names, last known mailing and email addresses, telephone numbers, work locations, and dates of employment of all potential opt-in plaintiffs.

The Court will hold a conference in this case on October 2, 2023 at 11:30 A.M. The Clerk of Court is respectfully directed to terminate the pending Motion. (Dkt. No. 18.)

SO ORDERED.

Dated: September 8, 2023
       White Plains, New York

                                                        KENNETH M. KARAS
                                            United States District Judge