UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

Tzu-Hsiang TUNG, *et al.*

                        *Plaintiffs*,

    v.

BANZAI STEAKHOUSE INC., *and* Karl Shao,

                        *Defendants*.

No. 22-CV-5750 (KMK)

OPINION & ORDER

---

Appearances:

Brian S. Schaffer, Esq.
Frank J. Mazzaferro, Esq.
Katherine Bonilla, Esq.
Fitapelli & Schaffer LLP
New York, NY
*Counsel for Plaintiff*

Raymond Nardo, Esq.
Law Office of Raymond Nardo
Mineola, NY
*Counsel for Plaintiff*

Sameer Nath, Esq.
Yuting Zhang, Esq.
Sim & DePaola LLP
Bayside, NY
*Counsel for Defendants*

Sang J. Sim, Esq.
Sim & Record, LLP
Bayside, NY
*Counsel for Defendants*

KENNETH M. KARAS, United States District Judge:

Plaintiff Tzu-Hsiang Tung ("Tung" or "Plaintiff"), on behalf of himself and similarly situated employees, brought this Action against Defendants Karl Shao and Banzai Steakhouse, Inc. pursuant to the Fair Labor Standards Act of 1938, 29 U.S.C. §§ 201 et seq. (the "FLSA"), and the New York Labor Law, §§ 190 et seq., §§ 650 et seq. (*See generally* Compl. (Dkt. No. 5).) Before the Court is the Parties' Motion for Settlement Approval. For the following reasons, the Motion is denied.

## I. Background

### A. Factual Background

Plaintiff was employed as a waiter at Banzai Steakhouse from April 14, 2022 to June 1, 2022. (*See* Compl. ¶ 16.) He has asserted various wage and hour violations. Specifically, Plaintiff alleges that Defendants: (i) failed to pay a lawful minimum wage and premium overtime pay in violation of the FLSA and NYLL, (*id.* at ¶¶ 2, 21–22, 52–58, 59–64, 65–71, 72–75); (ii) deprived him of tips in violation of the FLSA and the NYLL, (*id.* at ¶¶ 3, 27–30, 85–87); (iii) violated the NYLL by failing to provide wage statements and related notices, (*id.* at ¶ 76–78, 79–81); (iv) failed to pay a "spread of hours" premium for each day he worked a shift over 10 hours, in violation of the NYLL (*id.* at ¶¶ 31–32; 82–84). Accordingly, Plaintiff seeks to recover unpaid wages, unpaid overtime compensation, unpaid "spread of hours" premiums, misappropriated tips, and other damages. (*Id.* at ¶¶ 52–87.) He has also sought liquidated damages, pre- and post-judgment interest, and attorney fees and costs. (*Id.*)

### B. Procedural History

Plaintiff Tung filed this Action on July 7, 2022. (*See generally* Compl.) On August 16, 2022, Defendants filed their Answer. (*See* Answer (Dkt. No. 6).) On September 23, 2022, the

Court set a case management plan. (*See* Dkt No. 17.) On April 29, 2024, the Parties submitted a letter informing the Court that they had reached an agreement in principle. (*See* Dkt. No. 37.) On July 1, 2024, the Parties submitted their settlement papers for the Court's approval pursuant to *Cheeks v. Freeport Pancake House, Inc.*, 796 F.3d 199 (2d Cir. 2015). (*See* Mot. for Settlement Approval ("SA Mem.") (Dkt. No. 41); Decl. of Katherine Bonilla ("Bonilla Decl.") (Dkt. No. 42).)

## II.  Discussion

### A.  Standard of Review

Under Federal Rule of Civil Procedure 41(a)(1)(A), a plaintiff's ability to dismiss an action without a court order is made "[s]ubject to . . . any applicable federal statute." "Except as provided in Rule 41(a)(1), an action may be dismissed at the plaintiff's request only by court order, on terms that the court considers proper." Fed. R. Civ. P. 41(a)(2). The Second Circuit has held the FLSA is an "applicable federal statute," such that "Rule 41(a)(1)(A)(ii) stipulated dismissals settling FLSA claims with prejudice require the approval of the district court or the [Department of Labor] to take effect." *Cheeks*, 796 F.3d at 206. Therefore, the Court must be satisfied the parties' agreement is "fair and reasonable." *Penafiel v. Rincon Ecuatoriano, Inc.*, No. 15-CV-112, 2015 WL 7736551, at *1 (S.D.N.Y. Nov. 30, 2015); *see also Velasquez v. SAFI-G, Inc.*, 137 F. Supp. 3d 582, 584 (S.D.N.Y. 2015) (same).

In deciding the fairness of a settlement, there is generally "a strong presumption in favor of finding a settlement fair, as the Court is generally not in as good a position as the parties to determine the reasonableness of an FLSA settlement." *Lliguichuzhca v. Cinema 60, LLC*, 948 F. Supp. 2d 362, 365 (S.D.N.Y. 2013) (internal quotation marks omitted); *see also Matheis v. NYPS, LLC*, No. 13-CV-6682, 2016 WL 519089, at *1 (S.D.N.Y. Feb. 4, 2016) (same); *Souza v.

*65 St. Marks Bistro*, No. 15-CV-327, 2015 WL 7271747, at *4 (S.D.N.Y. Nov. 6, 2015) (same); *Martinez v. Hilton Hotels Corp.*, No. 10-CV-7688, 2013 WL 4427917, at *1 (S.D.N.Y. Aug. 20, 2013) (same).

Although the Court must consider the totality of circumstances, the most significant factors are:

> (1) the plaintiff's range of possible recovery; (2) the extent to which the settlement will enable the parties to avoid anticipated burdens and expenses in establishing their respective claims and defenses; (3) the seriousness of the litigation risks faced by the parties; (4) whether the settlement agreement is the product of arm's-length bargaining between experienced counsel; and (5) the possibility of fraud or collusion.

*Wolinsky v. Scholastic Inc.*, 900 F. Supp. 2d 332, 335 (S.D.N.Y. 2012) (internal quotation marks omitted); *see also Zamora v. One Fifty Fifty Seven Corp.*, No. 14-CV-8043, 2016 WL 1366653, at *1 (S.D.N.Y. Apr. 1, 2016) (same); *Garcia v. Jambox, Inc.*, No. 14-CV-3504, 2015 WL 2359502, at *2 (S.D.N.Y. Apr. 27, 2015) (same).

Certain other factors weigh against finding the proposed settlement fair and reasonable, which include:

> (1) the presence of other employees situated similarly to the claimant; (2) a likelihood that the claimant's circumstance will recur; (3) a history of FLSA noncompliance by the same employer or others in the same industry or geographic region; and (4) the desirability of a mature record and a pointed determination of the governing factual or legal issue to further the development of the law either in general or in an industry or in a workplace.

*Wolinsky*, 900 F. Supp. 2d at 336 (internal quotation marks omitted); *see also Villalva-Estrada v. SXB Rest. Corp.*, No. 14-CV-10011, 2016 WL 1275663, at *2 (S.D.N.Y. Mar. 31, 2016) (same); *Garcia*, 2015 WL 2359502, at *2 (same); *Camacho v. Ess-A-Bagel, Inc.*, No. 14-CV-2592, 2014 WL 6985633, at *2 (S.D.N.Y. Dec. 11, 2014) (same).

This decision "is thus an information intensive undertaking," *Camacho*, 2014 WL 6985633, at *2, and "the [P]arties must provide the [C]ourt with enough information to evaluate

the bona fides of the dispute," *Gaspar v. Personal Touch Moving, Inc.*, No. 13-CV-8187, 2015 WL 7871036, at *1 (S.D.N.Y. Dec. 3, 2015) (citation and quotation marks omitted). To this end, courts require information regarding:

> the nature of [the] plaintiffs' claims, . . . the litigation and negotiation process, the employers' potential exposure . . . to [the] plaintiffs . . ., the bases of estimates of [the] plaintiffs' maximum possible recovery, the probability of [the] plaintiffs' success on the merits, and evidence supporting any requested fee award.

*Id.* (first alteration in original) (quotation marks omitted) (quoting *Lopez v. Nights of Cabiria, LLC*, 96 F. Supp. 3d 170, 176 (S.D.N.Y. 2015)).

B.  Application

    1.  Whether Settlement Amount is Fair and Reasonable

Under the Settlement Agreement, Defendants agree to pay Plaintiff a total sum of $12,000. (*See* Bonilla Decl. Ex. A ("SA") ¶ 2 (Dkt. No. 42-1).) Out of the settlement amount of $12,000.00, Plaintiff will retain $7,473.00 and pay his counsel fees and costs in the amount of $4,527.00. (SA Mem. 2–3.) Plaintiff alleges his maximum recovery would be $4,650.00 in minimum wages, $1,935.00 in overtime wages, $5,105.00 in damages, $1,850 in WTPA Notice penalties, $5,000 in WTPA wage statement penalties, and $790.20 in interest. (*See* SA Mem. 2.)

The Parties represent that Plaintiff's best-case total recovery would be approximately $17,850.20, including liquidated damages. (*See id.* at 2.) However, adding all the constituent damages Plaintiff claims to be entitled to, the maximum recovery should be $19,330.00 ($4,650.00 + $1,935.00 + $5,105.00 + $1,850 + $5,000 + $790.20). Given this calculation, Plaintiffs' recovery pursuant to the settlement is just under 66% of the maximum damage calculation. This recovery amount may be acceptable. *See McPherson v. Look Ent. Ltd.*, No. 23-CV-4273, 2025 WL 43165, at *3–4 (E.D.N.Y. Jan. 7, 2025) (holding that a settlement amount equivalent to 8.5% of the plaintiffs' best-case scenario recovery was acceptable);

5

*Caccavale v. Hewlett-Packard Co.*, No. 20-CV-974, 2024 WL 4250337, at *18–19 (E.D.N.Y. Mar. 13, 2024) (concluding that a settlement that made up 16% of the best-case scenario recovery was reasonable, and collecting cases).

Nevertheless, to permit the Court to accurately assess the reasonableness of the settlement amount, the Parties are required to clarify and substantiate their estimates of Plaintiff's best-case settlement amount, *see Montes v. Cnty. Comfort Home Sols., Inc.*, No. 23-CV-7579, 2024 WL 5004676, at *3 (S.D.N.Y. Dec. 6, 2024) (denying a motion for settlement approval because the Parties failed to provide a detailed calculation of the settlement amount); *Zekanovic v. Augies Prime Cut of Westchester, Inc.*, No. 19-CV-8216, 2020 WL 5894603, at *3 (S.D.N.Y. Oct. 5, 2020) (same); *Nights of Cabiria*, 96 F. Supp. 3d at 176 ("The parties have not provided the court with each party's estimate of the number of hours worked or the applicable wage." (citation and alteration omitted)); *Gaspar*, 2015 WL 7871036, at *3 (noting that although the court was satisfied with the parties' explanation of the methodology used to generate settlement amounts, the parties failed to submit the "underlying data" to which the methodology was applied (emphasis removed)).

For this reason, the Court cannot find the settlement agreement is fair and reasonable.

2.  <u>Good Faith</u>

The Court is satisfied by the Parties' representation that the Settlement Agreement was negotiated competently, in good faith, at arm's length, and that there was no fraud or collusion. (*See* SA Mem. 3–5.)

3.  <u>Similarly Situated Individuals</u>

Plaintiff sent a notice to five potentially similarly situated individuals via U.S. mail and text message, and none of them returned consent forms. (*See* SA Mem. 1.) Courts have noted

that the fact that no other employee has come forward and that the plaintiff would be the only employee affected by settlement and dismissal are factors that support approval of the proposed settlement. *See Escobar v. Fresno Gourmet Deli Corp.*, No. 16-CV-6816, 2016 WL 7048714, at *3 (S.D.N.Y. Dec. 2, 2016) (noting that no other employee came forward and that the plaintiff would "be the only employee affected by the settlement and dismissal," and that these facts supported approval of the proposed settlement); *Penafiel*, 2015 WL 7736551, at *2 (noting that the fact that "[n]o other employee ha[d] come forward" supported settlement approval); *Santos v. Yellowstone Props., Inc.*, No. 15-CV-3986, 2016 WL 2757427, at *3 (S.D.N.Y. May 10, 2016) (same). For this reason, the Court finds that this factor militates in favor of settlement approval.

    4. Likelihood of Recurrence

As Plaintiff is no longer employed by Defendants, (*see* Compl. ¶ 16 (stating that Plaintiff's employment ended on June 1, 2022)), there is a low "likelihood that the claimant's circumstance will recur," *Wolinsky*, 900 F. Supp. 2d at 336 (citation omitted), which weighs in favor of approving the Settlement Agreement.

    5. Release Provision

"[T]he FLSA is a uniquely protective statute," *Cheeks*, 796 F.3d at 207, and courts will not approve settlement agreements that contain overly broad release provisions that would "waive practically any possible claim against the defendants, including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues," *id.* at 206 (quoting *Nights of Cabiria*, 96 F. Supp. 3d at 181); *see also Lazaro-Garcia v. Sengupta Food Servs.*, No. 15-CV-4259, 2015 WL 9162701, at *2 (S.D.N.Y. Dec. 15, 2015) ("If the parties wish to obtain approval of their settlement, any release provision must be limited to the claims at issue in this action."); *Gonzales v. Lovin Oven Catering of Suffolk, Inc.*, No. 14-CV-2824, 2015 WL 6550560, at *3

(E.D.N.Y. Oct. 28, 2015) (rejecting a settlement agreement where "the parties' release language . . . include[d] 'actions and/or claims against the [d]efendants, known or unknown, which [the plaintiff] may have as of the date of this [a]greement including but not limited to any alleged violation of any federal, state or local law, regulation, rule or ordinance which relates in any way to [the] [d]efendants' payment of wages to [the] [p]laintiff during [the] [p]laintiff's employment with [the] [d]efendants'"); *Flood v. Carlson Rests. Inc.*, No. 14-CV-2740, 2015 WL 4111668, at *2 (S.D.N.Y. July 6, 2015) (rejecting a settlement agreement that, in effect, "waive[d] any possible claims against [the] [d]efendants—including unknown claims and claims that have no relationship whatsoever to wage-and-hour issues"). To that end, releases must generally be limited to wage and hour issues, *see Cheeks*, 796 F.3d at 206, and "may include claims not presented and even those which could not have been presented, but only when the released conduct arises out of the identical factual predicate as the settled conduct," *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation and quotation marks omitted).

> Here, the Settlement Agreement release provides in relevant part that Plaintiff:
>
> hereby irrevocably and unconditionally release[s] and forever discharge[s] Defendants from any and all claims which they now have, may have or may hereafter have, arising under FLSA, the NYLL or any other statute, regulation or other authority related to the claims alleged or that could have been alleged in the Complaint.

(SA ¶ 3(a).) "As written, the Release could potentially extinguish claims under provisions of the FLSA that have no relationship whatsoever to the claims at issue in this case." *See Shah v. 786 MS Corp.*, No. 20-CV-4406, 2021 WL 2789265, at *4 (S.D.N.Y. Apr. 23, 2021) (alterations adopted) (internal quotation marks omitted). The release is not limited to wage and hour claims, and thus, taken literally, would have the effect of releasing *any* claims Plaintiff may have against Defendants. *Rojas v. Bronx Moon LLC*, No. 17-CV-5825, 2018 WL 4931540, at *3 (S.D.N.Y. Oct. 10, 2018) (rejecting proposed settlement releasing "any and all FLSA claims and NYLL

8

claims of any kind or nature"). Furthermore, by covering "all claims . . . that could have been alleged in the Complaint," (SA ¶ 3(a)), the release "leaves open the possibility that it applies to claims other than the wage and hour claims that are the focus of this lawsuit." *Aguilar v. Tacos Grand Cent., Inc.*, No. 21-CV-1963, 2023 WL 2644285, at *3 (S.D.N.Y. Mar. 27, 2023). The Court, therefore, cannot find that the release is "fair and reasonable." *See id*.

    5.  Attorneys' Fees

Under both the FLSA and NYLL, a successful plaintiff—including one who settles—is entitled to attorneys' fees. *See Lizondro-Garcia v. Kefi LLC*, No. 12-CV-1906, 2015 WL 4006896, at *2 (S.D.N.Y. July 1, 2015) (citing, inter alia, 29 U.S.C. § 216(b), NYLL §§ 198, 663(1)). Although courts may elect to award fees by considering either the lodestar method (the reasonable hourly rate of the attorney multiplied by the number of hours reasonably expended) or the percentage method (a percentage of the total amount recovered by the plaintiffs) "[t]he trend in [the Second] Circuit is toward the percentage method." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005); *see also Burgos v. JAJ Cont. Furniture Inc.*, No. 23-CV-3739, 2024 WL 3834147, at *4 (S.D.N.Y. Aug. 14, 2024) (same). But even where attorneys' fees are sought pursuant to the percentage of the fund method, "counsel must submit evidence providing a factual basis for the award." *Wolinsky*, 900 F. Supp. 2d at 336; *see also Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635, 2014 WL 4953746, at *2 (S.D.N.Y. Sept. 26, 2014) ("Counsel must provide a factual basis for a fee award, typically with contemporaneous time records."). A proper fee request thus includes "contemporaneous billing records documenting, for each attorney, the date, the hours expended, and the nature of the work done." *Nights of Cabiria*, 96 F. Supp. 3d at 181 (citation omitted). The Court must also determine the reasonableness of the hourly rate by considering the "prevailing market rate for lawyers in the

district in which the ruling court sits." *Anthony v. Franklin First Fin., Ltd.*, 844 F. Supp. 2d 504, 507 (S.D.N.Y. 2012).

      Here, Plaintiff's counsel seeks $527.00 in costs and a fee award of $4,000.00, which is approximately one-third of the total settlement amount. (SA Mem. 3.)  Courts in the Second Circuit routinely award attorneys' fees in FLSA settlements of one-third of the total recovery. *See Zorn-Hill v. A2B Taxi LLC*, No. 19-CV-1058, 2020 WL 5578357, at *6 (S.D.N.Y. Sept. 17, 2020) (collecting cases); *Garcia v. Atlantico Bakery Corp.*, No. 13-CV-1904, 2016 WL 3636659, at *1 (S.D.N.Y. June 29, 2016) ("[O]ne-third of the total award is the customary contingency percentage in FLSA cases."); *see also Ocasio v. Big Apple Sanitation, Inc.*, No. 13-CV-4758, 2016 WL 5376241, at *2 (E.D.N.Y. Mar. 16, 2016) (noting that the fee sought was "less than the typical contingency fee percentage of 33 1/3%"), *report and recommendation adopted*, 2016 WL 5390123 (E.D.N.Y. Sept. 26, 2016).  For this reason, the Court finds that the attorneys' fees are reasonable.

### III.  Conclusion

      For the reasons set forth above, the request to approve the proposed settlement is denied without prejudice.  The Parties may reapply for approval of a settlement that complies with this order.

SO ORDERED.

Dated:   March 24, 2025
           White Plains, New York

                                              KENNETH M. KARAS
                                              United States District Judge